**No. 19-2405**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

M.S. WILLMAN,
*Plaintiff-Appellant,*

V.

UNITED STATES OFFICE OF ATTORNEY GENERAL,
*Defendant-Appellee.*

On Appeal from United States District Court for the United States District Court
Eastern District of Michigan, Southern Division
Case No: 2:19-cv-10360 (Honorable Gershwin A. Drain)

**REPLY BRIEF
PLAINTIFF-APPELLANT
APPEAL ORDER OF DISMISSAL**

DANIEL C. WILLMAN (P55867)
248-231-0705
PO 606 Pinckney, MI 48169
danielcwillman@aol.com
*Attorney for Plaintiff-Appellant
(Lead Counsel)*

1

# **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant

M.S. Willman certifies as follows:

1.    Is said party a subsidiary or affiliate of a publicly-owned corporation?

NO

2.    Is there a publicly-owned corporation, not a party to the appeal, that has a

financial interest in the outcome?

NO

/s/ Daniel C. Willman
Daniel C. Willman

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   AN INDEPENDENT DUTY FOR STATE OFFENDERS TO
     REGISTER WITH THE FEDERAL GOVT. DOES NOT EXIST.
                                    &
     UNDER THE PLAIN LANGUAGE OF SORNA, U.S. SUPREME
     COURT PRECEDENT AND THIS NATIONS'S SYSTEM OF DUAL
     SOVEREIGNTY, STATES/JURISDICTIONS CONTROL WHO IS ON
     THEIR REGISTRIES.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II.  UNPUBLISHED OPINIONS SUCH AS *U.S. V. PAUL*, ARE NEVER
     CONTROLLING/BINDING AUTHORITY FOR THIS COURT.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. APPELLANT'S POSITION IN REGARD TO AMICUS ISSUES.
     SORNA DOES NOT INFRINGE ON STATE POLICE POWERS.
     FURTHERMORE THE RELIEF REQUESTED BY APPELLANT IS
     CONSISTENT WITH THE PLAIN LANGUAGE OF SORNA.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

REQUEST FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

REQUEST FOR ATTORNEY FEES AND STATEMENT OF NON-WAVIER. . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ADDENDUM, SORNA SECTION IN PART . . . . . . . . . . . . . . . . . . . . . . . . . . A1

**TABLE OF CASES, STATUTES**
**AND OTHER AUTHORITIES**

| **U.S. Constitution** | **Page** |
|---|---|
| Article I | 6, 21,29 |
| Article IV | 28 |
| 4th Amendment | 29 |
| 5th Amendment | 29 |
| 8th Amendment | 29 |
| 10th Amendment | Passim |
| 14th Amendment | 29 |

**Federal Statues**

| | |
|---|---|
| 18 U.S.C. § 2250 | Passim |
| 34 U.S.C. §20913 | 3, 6, 23, 25, 28 |
| 34 U.S.C. §20914 | 6, 16 |
| 4 U.S.C. §20920 | 19-20, 24 |
| 34 U.S.C. §20921 | 19-20, 24 |
| 34 U.S.C. §20922 | 19-20, 23 |

**Other Authority**
DOJ SMART office
Sex Offender Registration Notification in the U.S:
Current Case Law and Issues 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 12, 19, 24

**TABLE OF CASES, STATUTES
AND OTHER AUTHORITIES-continued**

**Federal Cases -U.S. Supreme Court**                                    **Page**

*Business v. Sebelius*,
567 U.S. 519, 132 S.Ct. 2566, 183 L.Ed.2d 450(2012) . . . . . . . . . . . . . . . . . . . . . 22

*Caminetti v. United States*,
242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917) . . . . . . . . . . . . . . . . . . . . . . . 14

*Carr v. United States,*
560 U.S. 438, 1130 S.Ct. 2229, 76 L.Ed.2d 1152 (2010) . . . . . . . . . . . . . . . . Passim

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) . . . . . . . . . . . . . . . . . . 4, 11-12

*Connecticut National Bank v. Germain*,
503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) . . . . . . . . . . . . . . . . . . . . . .14

*Ex parte Young,*
209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714(1908) . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gonzalez v. Raich*,
545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1(2005). . . . . . . . . . . . . . . . . . . . . . . . . 22

*Helvering v. Davis,*
301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937) . . . . . . . . . . . . . . . . . . . . . . . . .21

*Hensley v. Eckerhart,*
461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40(1983) . . . . . . . . . . . . . . . . . . . . . . 29

*Iselin v. U.S,*
270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566 (1926) . . . . . . . . . . . . . . . . . . . . . . . . .14

Pennsylvania Dept. of Corrections v. Yeskey,
524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) . . . . . . . . . . . . . . . . . . 14, 23

**Federal Cases -U.S. Supreme Court -continued**                          **Page**

*Reynolds v. U.S.,*
565 U.S. 432, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012) . . . . . . . . . . . . . . . . . . . Passim

*South Dakota v. Dole*,
483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) . . . . . . . . . . . . . . . . . . . . . 21

*Steward Machine Co. v. Collector of Internal Revenue,*
301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937) . . . . . . . . . . . . . . . . . . . . . . 21

*U.S. v. Kebodeaux*,
570 U.S. 387, 133 S.Ct. 2496, 186 L.Ed.2d 540,(2013) . . . . . . . . . . . . . . . . . . Passim

*U.S. v. Lanier*,
520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) . . . . . . . . . . . . . . . . . . . . . .13

*U.S. v. Lopez*,
514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) . . . . . . . . . . . . . . . . . .7, 21-22

*U.S. v.Missouri Pac. R.R. Co.*
278 U.S. 269 49 S.Ct. 133, 73 L.Ed. 322(1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S v. Morrison,*
529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) . . . . . . . . . . . . . . . . .7, 10, 22

*Wickard v. Filburn*,
317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**6th Circuit Cases**

*Fonseca Consolidated Rail,*
246 F.3d 585 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 5, 15

## TABLE OF CASES, STATUTES
## AND OTHER AUTHORITIES -continued

**6th Circuit Cases-continued**                                    **Page**

*Graiser v. Visionworks.*,
819 F.3d 277 (6th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Van Dresser Corp.*,
128 F.3d 945(6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Planned Parenthood v. Dewine,*
931 F.3d 530, 544 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 15

*Springfield Armory,  v. City of Columbus*,
29 F.3d 250, 252 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Caseer*,
399 F.3d 828 (6th  Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Coleman*,
675 F.3d 615 (6th  Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*U.S. v. Felts*,
674 F.3d 599 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

**Other Federal Circuit Cases**

*Kennedy v. Allera*,
612 F.3d 261 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*U.S. v. Billiot*,
785 F.3d 1266 (8th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. v. Del Valle-Cruz*,
785 F.3d 48 (1st Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**Other Federal Circuit Cases-continued**                                    **Page**

*U.S. v. Gould,*
568 F.3d 459 (4th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*U.S. v. Pendleton,*
636 F.3d 78 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*U.S. v. Shenandoah,*
595 F.3d 151(3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Unpublished 6th Circuit Cases**

*Hood v. Keller,*
229 F. App'x 393 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. v. Paul,*  **\* \***
718 F.Appx. 360 (6th Cir.2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

   **\*    For complete SORNA Statute and sections see Appendix in Support
        of Complaint R. 1.1, PageID 151, and R.1.1 PageID 232, for current
        cross reference SORNA reclassification**

   **\* \* Did not meet any of the criteria for consideration for publication, 6
        Cir. I.O.P. 32.1 Preparation and Release of Opinions; Publication
        of Decisions See Opening Brief Addendum, A-1-A3.**

## **INTRODUCTION**

Appellee's position is that under SORNA all State offenders[1] are subject to an independent duty to register with the Federal government. Appellee's argument is based on the untethered and unpublished decision in *U.S. v. Paul*, 718 F. App'x 360 (6th Cir. 2017).

The Plain Language of SORNA does not state nor infer that there exists an independent duty for State offenders to register with the Federal government nor has the U.S. Supreme Court ever ruled or inferred that such a duty exists. Additionally the Plain Language of SORNA does not state or hold, nor has the U.S. Supreme Court ever ruled or inferred that intrastate travel by State offenders who do not cross Jurisdictional lines are subject to Federal oversight[2]. The Court, in fact, has noted the direct opposite on multiple occasions.

Appellee's position runs 100% counter to the U.S. Supreme Court holdings in *Carr v. U.S.* 560 U.S. 438 (2010), *Nichols v. U.S.* 136 S.Ct. 1113 (2016) and *U.S. v. Kebodeaux*, 570 U.S. 387 (2013).

---

[1]

Including former Registrants such as Appellant who were properly removed from a registry in Federal or State court.

[2]

Absent a Federal conviction.

SUMMARY OF ARGUMENT

There does not exist an independent duty for State offenders to register with the Federal government. Appellee's argument that such a duty exists is based on the unpublished decision *U.S. v. Paul,* 718 F. App'x 360 (6th Cir. 2017). There is long-standing Sixth Circuit precedent that "unpublished opinions do not bind this court." *Planned Parenthood v. Dewine,* 931 F.3d 530, 544 (6th Cir. 2019) and are "[N]ever controlling authority" *Fonseca Consolidated Rail,* 246 F.3d 585, 591 (6th Cir. 2001).

Since SORNA'S 2006 passage, the U.S. Supreme Court has had multiple occasions to rule on various challenges to SORNA. Not once has the Court ever ruled, suggested nor inferred in any way, that SORNA gives the Federal government jurisdiction to control State registries, or intrastate travel of State offenders.

"Congress instead chose to handle federal and state sex offenders differently." *Carr v. U.S.* 560 U.S. 438, 452 (2010). Absent a Federal sex offense conviction, exceptions to who is required to appear or not appear on a State registry is a local matter controlled by the State/Jurisdiction, a fact acknowledged by the DOJ Smart Office in 2018.

> **[R]egistration is *conducted at the local level. . . . Every jurisdiction (state, territory and tribe) makes its own determinations about who is required to register*. (citation infra).**

> **The only Federal (SORNA) enforcement provision** against individuals is

2

found within the plain text of 18 U.S.C. § 2250, which subjects State sex offenders to Federal prosecution under SORNA **only if they travel in interstate or foreign commerce and then fail to register** under 34 U.S.C. § 20913(e).

When 18 U.S.C. § 2250(b) was added 10 years after SORNA's initial passage (International Megan's Law) Congress could have attempted to add a provision to control State registries and the intrastate movement of State offenders, yet did not.

The position of Appellant is consistent with SORNA. SORNA[3] does not violate State 10th Amendment Police Powers. It was with our Nation's system of dual sovereignty in mind, that Congress took great care to avoid serious Constitutional concerns when crafting SORNA.

Furthermore, Appellee's Response presents and reduces *Kebodeaux* (the seminal case in regard to SORNA and State Police Powers) to an afterthought, which Appellant cannot ignore. Under the holding, concurrence and even the dissent of *Kebodeaux*, if the position of Appellee was included as a SORNA provision, it would

---

[3] **Amicus Filings**

Appellant appreciates the concerns of all three Amicus Briefs. Yet it is the position of Appellant that SORNA was purposefully crafted so as not to infringe on State Police Powers. Registration is left to the States to determine who appears and does not appear on their registries. It is the position of Appellant that SORNA and the relief requested can perfectly co-exist and serve as a perfect example of this Nation's system of dual sovereignty, just as the Framers intended.

have been clearly struck down as an infringement on State 10th Amendment Police Powers. The position of Appellee, in fact, does not exist.

There is zero ambiguity, Appellee's position is unsupported by the Plain Language of SORNA *Chevron . v. Natural Res. Def. Council*, 467 U.S. 837 (1984) and it also stands in direct conflict with *Carr v. U.S.* 560 U.S. 438 (2010), *Nichols v. U.S.* 136 S.Ct. 1113 (2016) and *U.S. v. Kebodeaux*, 570 U.S. 387 (2013).

The other cases cited by Appellee to prop up their position concern three groups: Active registrants convicted of a Federal crime and under direct Federal supervision; Active Federal or State offenders who traveled in interstate commerce and violated 18 U.S.C. § 2250[4]; and Active offenders who claimed their States were not SORNA compliant so they did not have to register, when in fact their States were only lagging in implementation of SORNA, but still possessed some form of a registration system.

Not one of the cases cited by Appellee support the notion that there exists an independent duty for State offenders to register with the Federal government or that the Federal government can control their intrastate movements. For all of the above, Appellant is not required to register under SORNA even when traveling interstate.

---

[4] Seeking to evade detection by establishing residence in a new Jurisdiction and not registering with the new Jurisdiction.

**I.    AN INDEPENDENT DUTY FOR STATE OFFENDERS TO REGISTER WITH THE FEDERAL GOVT. DOES NOT EXIST.**
**&**
**UNDER THE PLAIN LANGUAGE OF SORNA, U.S. SUPREME COURT PRECEDENT AND THIS NATIONS'S SYSTEM OF DUAL SOVEREIGNTY, STATES/JURISDICTIONS CONTROL WHO IS ON THEIR REGISTRIES.**

Appellee asserts that all State offenders are subject to an independent duty to register with the Federal government which would also result in the Federal government controlling the registration activities and intrastate movement of State offenders. The sole authority for Appellee's argument centers around the unpublished, untethered decision in *U.S. v. Paul*, 718 F. App'x 360 (6th Cir. 2017).

This Court recently noted in *Planned Parenthood v. Dewine*, 931 F.3d 530, 544 (6th Cir. 2019) the long-standing Sixth Circuit precedent that "unpublished opinions do not bind this court." *Fonseca Consolidated Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001), and are "[N]ever controlling authority."

Since the passage of SORNA in 2006, the U.S. Supreme Court has had multiple occasions to rule on various challenges to SORNA. Not once has the Court ever ruled, suggested nor inferred in any way, shape or form, that SORNA gives the Federal government jurisdiction to control State registries or intrastate travel of State offenders. As was noted in *Reynolds v. U.S.,* 565 U.S. 432, 435 (2012) Congress enacted SORNA to only tie together a patchwork of registries, to close loopholes, end

5

deficiencies  and keep track of offenders.

The most challenged SORNA section by far has been 18 U.S.C. § 2250, which contains criminal sanctions for active registrants who are required to register in the Jurisdiction (34 U.S.C.  § 20914) in which they live, (and in some cases where they work or go to school), who then travel across jurisdictional lines with the intent to evade detection by failing to register in their new Jurisdiction of residence.

**18 U.S.C. §2250**
**The Crafting of SORNA**
**Took Care to Recognize Dual Sovereignty**

34 U.S.C. § 20913(e)[5] does not contain a Federal enforcement provision against individuals who fail to register locally. **The only Federal (SORNA) enforcement provision** against individuals is found within the plain text of 18 U.S.C. § 2250, which subjects State sex offenders to Federal prosecution under SORNA **only if they travel in interstate or foreign commerce and then fail to register** (new residence, school, or place of work) under § 34 U.S.C. 20913(e).

When 18 U.S.C. § 2250(b) was added[6] to SORNA 10 years after SORNA's

---

[5]
34 U.S.C. §20913 (e).  Jurisdictions offer a minimum punishment of up to one year for non-compliant offenders required to register with a Jurisdiction's registry, something no longer required of Appellant.

[6]
18 U.S.C. § 2250(b) falls clearly within the Article I  power of Congress. Necessary and Proper, Spending, Commerce clauses.

initial passage (to add International Travel Reporting Violations, Megan's Law[7]), Congress could have attempted to add a provision to track/control the intrastate movement of State offenders and punish them Federally, yet did not. Congress was mindful of *U.S. v. Lopez*, 514 U.S. 549 (1995) and *U.S v. Morrison,* 529 U.S. 598 (2000) where thoughtfully intended yet Constitutionally defective legislation[8] was nullified. In both cases the Court held the legislation in question infringed upon 10th Amendment State Police Powers.

It is clear Congress took great care to avoid the serious Constitutional concerns raised in *Lopez* and *Morrison* when crafting SORNA. It was against this backdrop and our Nation's system of dual sovereignty that SORNA was written in clear unambiguous terms, as was noted *Carr v. U.S.* 560 U.S. 438, 452 (2010): "Congress instead chose to handle federal and state sex offenders differently."

---

[7] The passage of § 2250(b) was in direct response to cases like *Nichols v. U.S.,* 136 S.Ct. 1113 (2016) where the defendant, an active offender on the State of Kansas registry, left Kansas without informing State authorities in order to establish a new residence in the Philippines. The Court found the move was legal under then existing Federal law but suggested *Nichols* could have been punished under Kansas state law.

[8] The goal sought in *Lopez* was to give an extra layer of protection to school children by having gun-free school zones (No guns within 1000 ft.). Congress later passed legislation with the same intent which withstood Constitutional Muster *Citation omitted*. In *Morrision* the goal sought was to provide an additional/supplemental Federal civil remedy to women victimized by gender violence.

### *Reynolds* Delegation & Exceptions

*Reynolds v. U.S.*, 565 U.S. 432 (2012) is generally only cited for two reasons: its patchwork[9] language and the applicability of delegating to the Attorney General the decision if the 2006 SORNA Act could be applied retroactively to pre-act offenders. **The purpose of the act was and is to coordinate State registries, not control them.**

While the Court found that the decision and authority to retroactively apply SORNA to pre-act offenders was properly delegated to the U.S. Attorney General, that delegation was narrowly tailored[10]-[11] to the applicability of the Act and did not confer the power to make exceptions to the Act, as the Court noted:

> [T]he Attorney General has authority to specify the Act's " applicability," not its " nonapplicability." And it consequently is more naturally read as conferring the authority to apply the Act, **not the authority to make**

---

[9]

The new federal Act reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems. . . The Act seeks to make those systems more uniform and effective. At 435.

[10]

Writing for the majority in *Reynolds,* Justice Breyer pointed out §2250 is a criminal statute (at 435). "When criminal penalties are at stake . . . a relatively strict test is warranted," *Springfield Armory, v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994). Also see *U.S. v. Caseer*, 399 F.3d 828, 835 (6th Cir. 2005)**.**

[11]

The *Reynolds,* Court also noted that §2250 "[M]akes it a crime for a person who is **"required to register"** under the Act and who " travels in interstate or foreign commerce" knowingly to " fai[l] to register or update a registration . . . ." At 434.

**exceptions**. That is how we normally understand a term such as " authority to specify" in the context of applying new rules to persons already governed by pre-existing rules. At 440.

As noted supra and infra, the ability to make exceptions is reserved for the States, who control the enforcement of their own registries consistent with our system of dual sovereignty.

While the *Reynolds* Court found SORNA applied to any pre-Act offender required to register it did note there is a distinction between a Federal and a State conviction: "Although a state pre-Act offender **could not be prosecuted until he traveled interstate**, there is no interstate requirement for a federal pre-Act offender" at 441. Thus an active State registrant as opposed to an active Federal registrant, as in *U.S. v. Kebodeaux*, 570 U.S. 387 (2013), cannot be guilty of a §2250 violation unless they travel interstate and then fail to register.

### *U.S. v. Kebodeaux*

In *U.S. v. Kebodeaux*, 570 U.S. 387 (2013), the defendant, a U.S. Service member, was convicted for a sex crime which violated the Uniform Code of Military Justice (Federal crimes). Upon discharge from the Military, the defendant took up residence in El Paso, Texas. At a later date the defendant moved to San Antonio, Texas, without updating his registration and was subsequently arrested and convicted for violating § 2250. The U.S. Supreme Court upheld the Conviction on the grounds

that the Federal government retained a special interest in keeping track of those convicted of Federal crimes. The Court also noted:

> "while SORNA punishes violations of its requirements (instead of violations of state law), <u>the Federal Government has prosecuted a sex offender for violating SORNA only when that offender also violated state-registration requirements</u>" at 398.

Appellant cannot violate State-registrations requirements because, as all parties can agree, he is no longer required to register with the State of Michigan. Based on the above, if Appellant is not subject to state law then he cannot be prosecuted under SORNA, and as such he is not required to register with the Federal government.

While the majority opinion in *Kebodeaux*, noted that Federal and State offenders are in fact treated differently, Chief Justice Roberts' concurrence emphatically held that the majority dictum discussion of Police Powers dangerously covered ground it should not have:

> Ordinarily such surplusage might not warrant a separate writing. Here, however, I worry that incautious readers will think they have found in the majority opinion something they would not find in either the Constitution or any prior decision of ours. . . " I write separately to stress not only that **a federal police power** is immaterial to the result in this case, but also that such a power could not be material to the result in this case— because it **does not exist**." at 401-02[12].

---

[12] ("The Constitution . . . withhold[s] from Congress a plenary police power") . . . ("[W]e always have rejected readings . . . that would permit Congress to exercise a police power"). *U.S. v. Morrison*, 529 U.S. 598, 618-619 (2000).

The Chief Justice further noted:

> I find it implausible to suppose— and impossible to support— that the Framers intended to confer such authority by implication rather than expression. A power of that magnitude vested in the Federal Government is not "consist[ent] with the letter and spirit of the constitution,". . . **It makes no difference that the Federal Government would be policing people previously convicted of a federal crime** — even a federal sex crime. The fact of a prior federal conviction, **by itself**, **does not give** Congress a freestanding, independent, and **perpetual interest in** protecting the public from the convict's **purely intrastate conduct.** 402-403.[13]-[14]

### *Chevron*

The proper analysis/standard for deciding if there exists any ambiguity surrounding an agency's application/interpretation of a statute was set forth in *Chevron. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) which used a two-step approach. The first question always is:

1.   [W]hether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

---

[13]

C.J. Roberts:  The danger of such confusion is heightened by the fact the Solicitor General adopted something very close to the police power argument. At 402.

[14]

Justice Thomas's dissent went a step further and asserted that the Federal government subjecting someone who is no longer subject to Federal custody was indeed a police action which upsets that careful balance of dual sovereignty. At 421.

2. If . . . Congress has not directly addressed the precise question at issue, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

As noted in *Reynolds v. U.S.*, 565 U.S. 432 (2012) supra the only SORNA issue ever delegated by Congress to the DOJ was its retroactive application to pre-Act offenders, not absolute control of State registries. As noted supra, infra, both Congress and the U.S. Supreme Court have clearly addressed the issue of who controls which State offenders appear on a Jurisdiction's registry. **In 2018 the DOJ also acknowledged that Jurisdictions do in fact control their registries:**

> [R]egistration is *conducted at the local level*. . . . **Every jurisdiction (state, territory and tribe) makes its own determinations about who is required to register**. R.1.1, PageID 97, Appendix support of Complaint. Sex Offender Registration Notification in the U.S: Current Case Law and Issues 2018. DOJ SMART OFFICE.

The above was made clear eight years earlier in *Carr v. U.S.* 560 U.S. 438, 452 (2010) when the Court noted:

> Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under §2250, it easily could have adopted language to that effect. That it declined to do so indicates that **Congress instead chose to handle federal and state sex offenders differently**.

The Plain Language of SORNA is clear that Registration is a local activity, States/Jurisdictions control the enforcement of their own registries.

<u>**Plain Language**</u>

Appellee asserts that all State offenders are subject to an independent duty to register with the Federal government, which means the Federal government could control their intrastate movement and activities. Appellee's argument centers around the unpublished decision in *U.S. v. Paul*, 718 F. App'x 360 (6th Cir. 2017).

The Plain language of SORNA does not state nor infer that there exists an independent duty for State offenders to register with the Federal government. Not once has the U.S. Supreme Court ever ruled or inferred that such a duty exists, in fact the opposite is true, supra. Furthermore the Plain Language of SORNA does not state or hold, nor has the U.S. Supreme Court ever ruled or inferred, that intrastate travel by State offenders, who do not cross Jurisdictional lines, are subject to Federal oversight.

**Appellee's position** and that of the District Court is nowhere to be found within the plain language of SORNA, it **does not exist**. Strict construction applies to resolve or eliminate ambiguity in a criminal statute but "only to conduct clearly covered" *U.S. v. Lanier*, 520 U.S. 259, 266 (1997). The conduct that Appellee asserts is covered appears nowhere within the text of SORNA, runs completely counter to U.S. Supreme Court Stare Decisis and to the DOJ Smart Office statement supra.

"Such ponderings cannot be the basis for imposing criminal punishment. We

interpret criminal statutes, like other statutes, in a manner consistent with ordinary English usage". . ."even the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text." *Nichols v. U.S.*, 136 S. Ct. 1113, 1119 (2016). " [W]e will interpret a statute to preserve rather than destroy the States' "substantial sovereign powers."  Penn. Dept. of Corrections v. Yeskey, 524 U.S. 206, 209 (1998).

The District Court did not address or follow the *Plain Language* of multiple SORNA provisions and, in fact, created an enlargement of SORNA that transcends judicial function, *Iselin v. U.S,* 270 U.S. 245, 251 (1926), resulting in impracticable consequences and an absurd result, *U.S. v.Missouri Pac. R.R. Co.* 278 U.S. 269, 278 (1929). "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise", *Caminetti v. U.S.*, 242 U.S. 470, 485 (1917).

"[I]n interpreting a statute a court should always turn to one cardinal canon before all others. . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-254 (1992).

For all of the above, the relief requested by Appellant should be granted.

**II.    UNPUBLISHED OPINIONS SUCH AS *U.S. V. PAUL*, ARE NEVER CONTROLLING/BINDING AUTHORITY FOR THIS COURT.**

Appellee's Response, pg. 12, asserts, as did the District Court Opinion, that the unpublished opinion of *U.S. v. Paul*, 718 F.App'x 360 (6th Cir. 2017) is not just persuasive but controlling and binding[15] authority.   Citing *Paul*, the District Court went so far as to state " the Sixth Circuit has already determined that a sex offender's obligations under SORNA do not depend on whether the sex offender has duties under applicable state sex offender registration laws" (Opinion, R.23 PageID 567).

As this Court most recently noted in *Planned Parenthood v. Dewine*, 931 F.3d 530, 544 (6th Cir. 2019) "unpublished opinions do not bind this court." The District Court finding that *Paul* was binding authority for the entire U.S. Sixth Circuit Court of Appeals was in error. *Fonseca Consolidated*., 246 F.3d 585, 591 (6th Cir. 2001), "Contrary to this assertion, unpublished opinions are never controlling authority." See 6th Cir. R. 28(g).  *Graiser v. Visionworks*., 819 F.3d 277, 283 (6th Cir. 2016). *In re Van Dresser Corp*., 128 F.3d 945, 948 (6th Cir. 1997).

Appellee attempts to further prop up *Paul* by dismissing (Response pg. 17) the

---

[15] The District Court also adopted the DOJ  contention  that an unpublished case could be controlling  authority citing a footnote from another unpublished case *Hood v. Keller*, 229 F. App'x 393, 398 n.5 (6th Cir. 2007). R.23 PageID 568).

on point U.S. Supreme Court Stare Decisis holdings of *Carr v. U.S.* 560 U.S. 438 (2010), and *Nichols v. U.S.*, 136 S.Ct. 1113 (2016) and instead offers several cases from other circuits which are not on point and can be easily distinguished from the case at hand.

## Active Registrants

**Appellant is not an active registrant.** The other authorities cited by Appellee involved active registrants who had either a Federal conviction, or active State requirements, all of whom sought to evade detection in violation of 18 U.S.C. § 2250 and did not update their new residence.

## Active Registrants
## Federal Conviction-State Reporting

In several cases cited by Appellee the Defendants were convicted of Federal offenses in Federal Court. Since the Federal Government is not a Jurisdiction for the purposes of registration (the Federal registry is only a compilation, a search engine) the defendants were required to register with their State of residence, place of work or school. 34 U.S.C. § 20914.

In *U.S. v. Kebodeaux*, 570 U.S. 387 (2013) the Defendant was court-martialed by the U.S. Military for a sex crime. Upon release the defendant settled in the State of Texas and then later moved (intrastate) within Texas and then failed to update his

registration, which resulted in a §2250 conviction. In *Kennedy v. Allera*, 612 F.3d 261 (4th Cir. 2010) the defendant, a former boarder patrol agent, was convicted in a California Federal Court for the rape and murder of an undocumented immigrant. The defendant served time in Maryland. Upon release, the defendant stayed in Maryland and later failed to register while still in Maryland, resulting in a §2250 conviction.

**Active Registrant**
**Federal and State Convictions**
**Moving Across Multiple Jurisdictional Lines**

In *U.S. v. Billiot*, 785 F.3d 1266 (8th Cir. 2015)(State conviction) the defendant was required to register for life, but the defendant later moved from Louisiana to Arkansas and did not register in his new State of residence.

In *U.S. v. Pendleton*, 636 F.3d 78 (3rd Cir. 2011) the defendant was convicted in the District of Columbia, for multiple interstate and international moves.

In *U.S. v. Coleman*, 675 F.3d 615 (6th Cir. 2012) the defendant who was convicted in the State of Ohio then moved to Kentucky without updating his change in residence.

In *U.S. v. Del Valle-Cruz*, 785 F.3d 48 (1st Cir. 2015) the defendant was convicted originally in State court in Oklahoma and was on Federal Probation for a §2250 violation. While on probation, the defendant moved to Florida and then to Puerto Rico.

**Active Registrant**
**States Lagging in Implementation of**
**Sorna but Still Possessing a Registration System**

Appellee also relies on *U.S. v. Felts*, 674 F.3d 599 (6th Cir. 2012). In *Felts* the defendant was convicted in Tennessee, served 15 yrs and then moved to Florida and then moved to Puerto Rico. The defendant, who was charged under§ 2250, asserted that because SORNA had not been fully implemented by Tennessee, he could not be charged with a §2250 violation.

As was noted in *Felts,* almost every State had some form of a pre-existing offender registry which predated the 2006 passage of SORNA, and just because SORNA was not fully implemented, did not excuse an active offender from having to register with the State. The holdings of *U.S. v. Gould*, 568 F.3d 459 (4th Cir.2009) *U.S. v. Shenandoah*, 595 F.3d 151(3rd Cir. 2010) cited by Appellee all stand for the same conclusion.

*Paul*, is inapplicable to the case at hand, as are the other cases and issues noted by Appellee, because Appellant is not an active registrant.

As Appellant stated multiple times in his Opening Brief and Rule 12 Response (R.21, PageID 507, 524, 538), 34 U.S.C. §20911 clearly defines who is required to register, what constitutes a registry and a registering jurisdiction. If a party is required to be on a Jurisdiction's registry, then and only then, is the information pertaining to

18

that registrant forwarded to the National registry database for inclusion per 34 U.S.C.

§20920, 20921 20922), a fact duly noted by the DOJ SMART OFFICE :

> [S]ex offender **registration is *conducted at the local level*.** . . . . . Every one of these systems has its own nuances and distinct features. **Every jurisdiction (state, territory and tribe) makes its own determinations about who is required to register**. Sex Offender Registration Notification in the U.S: Current Case Law and Issues 2018. R.1.1, PageID 97, Appendix in support of Complaint.

The Plain language of SORNA does not state nor infer that there exists an independent duty for State offenders to register with the Federal government. Nor has the U.S. Supreme Court ever ruled or inferred that such a duty exists: In fact the opposite is true, supra.

For all of the above, Appellee's reliance on *Paul* and the other cases noted above is misplaced. Appellant is no longer an active registrant and thus is not required to register.

**III.** **APPELLANT'S POSITION IN REGARD TO AMICUS ISSUES. SORNA DOES NOT INFRINGE ON STATE POLICE POWERS. FURTHERMORE THE RELIEF REQUESTED BY APPELLANT IS CONSISTENT WITH THE PLAIN LANGUAGE OF SORNA.**

SORNA allows Jurisdictions to control who is required to be on their Registries, supra. It is then and only then that registration information is forwarded to the Federal Government for inclusion on the Federal Search Engine Registry 34 U.S.C. §20920, 20921, 20922. For the reasoning below and supra, SORNA does not violate the Commerce Clause or infringe on State 10th Amendment Police Powers. Additionally, and of equal import, the relief requested by Appellant is consistent with the Plain Language of SORNA.

**Issues Raised in Amicus**

When filing his Complaint, Counsel for Appellant was well aware of the multitude of anti-commandeering doctrine 10th Amendment, Federalism,[16] and Commerce Clause cases and challenges aimed at the Constitutionality of SORNA.

While these cases and issues were throughly considered, Appellant chose not to invoke them to challenge any SORNA provision, since they have repeatedly and resoundingly been rejected by the U.S. Supreme Court and every U.S. Circuit Court

---

[16] Individual can have standing to challenge the constitutionality of an act of Congress that violates the Tenth Amendment. *Bond v. U.S.*, 564 U.S. 211 (2011).

20

of Appeals at every turn.  As such, a remand to consider such issues would be a waste of judicial and interested parties resources, as this Nation's Article III Courts have long considered such anti-commandeering issues laid to rest and mooted.

SORNA and the relief requested by Appellant can co-exist and are a perfect example of this Nation's system of dual sovereignty, as intended by the Framers.

**<u>Article I, Section 8, Clause 3</u>**
**<u>Commerce Clause lineage in a State Police Powers context</u>**

The lineage of Commerce Clause cases began with the seminal case of *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 421 (1810) and its progeny *NLRB v. Jones & Laughlin Steel*, 301 U.S. 1 (1937), *Wickard v. Filburn*, 317 U.S. 111 (1942) to *South Dakota v. Dole*, 483 U.S. 203 (1987),[17] which established the foundation to usher in the current model standard.

The current standard was set forth in *U.S. v. Lopez*, 514 U.S. 549 (1995)[18] which

---

[17] Congress, via the General Welfare & Necessary & Proper (Sweeping) Clauses, could pass legislation tied to its power under the  U.S. Const. Art. I, § 8 even if  strings are attached to legitimately promote the general  welfare. (See: *Helvering v. Davis*, 301 U.S. 619, 640 (1937), *Steward Mach. Co. v. Davis*, 301 U.S. 548, 585 (1937).

[18] *Lopez* put forth a broad 3 prong test (CIS) to see if legislation violates  the Commerce Clause.  In brief the test encompassed the use of the: 1. **Channels** of interstate commerce.  2. **Instrumentalities** of interstate commerce, or persons or things in interstate commerce; 3. or activities having a **substantial relation** to interstate commerce.

was reaffirmed and refined in *U.S. v. Morrison,* 529 U.S. 598 (2000)[19]with the added focus that legislation with Commerce Clause implications needed to clearly include a jurisdictional nexus and could not be too attenuated in order to withstand Constitutional muster. *Lopez* and *Morrision* were further solidified in *Gonzalez v. Raich*, 545 U.S. 1, 22 (2005) and *Business v. Sebelius*, 567 U.S. 519 (2012).

Before SORNA and the Federal laws which preceded it, nearly every State had a registration system which handily predated the Federal system, in fact some State statutes had been around for "close to half a century" *U.S. v. Kebodeaux*, 570 U.S. 387, 397 (2013). Because of the preceding fact, when crafting SORNA, the U.S. Congress was well aware that offender registration was already an area occupied by the States, via each State's respective enforcement of their traditional Police Powers.

**Ability to Make Exceptions:**

Under SORNA the Federal government was ONLY looking to correct an exploited and exposed loophole in the registration network and coherently bind together what had been a patchwork of Federal and State registration systems

---

[19]

In *Morrision* the Rehnquist Court further refined its decision in *Lopez:*
1) whether the activity being regulated is commercial or economic in nature;
2) whether the statute contains a jurisdictional element to limit its scope;
3) whether congressional findings reflect effects upon interstate commerce; and
4) whether the nexus (at 611) or link between the activity being regulated and interstate commerce is attenuated.

*Reynolds v. U.S.,* 565 U.S. 432, 435 (2012). The *Reynolds* Court also addressed the retroactive applicability of SORNA:

> [T]he Attorney General has authority to specify the Act's "applicability," not its " nonapplicability." And it consequently is more naturally read as conferring the authority to apply the Act, **not** the authority to **make exceptions**. At 440.

Without 18 U.S.C. §2250 there is zero Federal penalty for a non-compliant registrant. The guideline for a State penalty of at least one year is found in 34 U.S.C. §20913 (e).

SORNA was clearly crafted with our system of dual sovereignty in mind, which its Plain Language makes clear in black and white terms, by leaving to the States/Jurisdictions the ability to control their own registries and make exceptions as to which offenders are required and not required to be on their respective registries.

The Plain Language of SORNA is clear that Registration is a local activity, States/Jurisdictions control the enforcement of their own registries. **"**[W]e will interpret a statute to preserve rather than destroy the States' "substantial sovereign powers." Penn. Dept. of Corrections v. Yeskey, 524 U.S. 206, 209 (1998).

**Registration and the Ability to Make Exceptions**
**Are Local Activities**

As Appellant stated multiple times in his Opening Brief and Rule 12 Response (R.21, PageID 507, 524, 538), if a party is required to be on a Jurisdiction's registry,

then and only then, is the information pertaining to that registrant forwarded to the National registry database for inclusion per 34 U.S.C. §20920, 20921 20922, a fact duly noted by the DOJ SMART OFFICE supra.

While Congress gave the U.S. Attorney General the power to make SORNA retroactive, the ACT did not give the Attorney General the power to make exceptions, that power is left to the States, which is consistent with SORNA, the Commerce Clause, Necessary and Proper Clause, Spending Clause, Art. I, § 8, the 10th Amendment to the U.S. Constitution and the U.S. Supreme Court decisions in *Carr, Kebodeaux, Reynolds* and *Nichols*. The purpose of the act was and is to coordinate State registries, not control them.

For all of the above, Appellant's request for relief is wholly consistent with the Plain Language of SORNA and should be granted.

## **CONCLUSION**

As a consequence of Appellant's removal from the State of Michigan registry (R.16, PageID 406, Stipulation and Order), he was also removed from the Federal registry, which only compiles the information which appears on Jurisdictions' registries. The District Court did not accept this change in circumstances[20] and instead adopted Appellee's position that the unpublished decision in *U.S. v. Paul*, 718 F.App'x 360 (6th Cir. 2017) subjects all State offenders to an independent duty to register with the Federal government.

Jurisdictions,[21] not the Federal government, determine the exceptions as to who is and is not required to appear in a Jurisdiction's registry. The only exception Congress delegated to the U.S. Attorney General was whether to apply SORNA retroactively to pre-Act offenders. *Reynolds*.

If SORNA contained an independent Federal Registration requirement or

---

[20] Appellee's Response, PageID 10-11, mentions several times Appellant cited language challenging "SORNA TYPE statutes." Because of the change in circumstances that line of reasoning was dropped well before appeal.

[21] The Federal government is not a Jurisdiction 34 U.S.C. §20913 "lists **only three possibilities for an " involved" jurisdiction**: " where the offender resides, where the offender is an employee, and where the offender is a student."*Nichols v. U.S.*, 136 S.Ct. 1113, 1118 (2016).

allowed the Federal government to control the intrastate movements of State offenders, it would conflict with our Nation's system of dual sovereignty. Based on past experience, where thoughtfully intended yet Constitutionally defective legislation was nullified by the U.S. Supreme Court, Congress was mindful to avoid this serious Constitutional concern.

The Plain language of SORNA does not state nor infer that there exists an independent duty for State offenders to register with the Federal government. Nor has the U.S. Supreme Court ever ruled or inferred that such a duty exists. Additionally the Plain Language of SORNA does not state or hold, nor has the U.S. Supreme Court ever ruled or inferred, that intrastate travel by State offenders who do not cross Jurisdictional lines, are subject to Federal oversight (the Court in fact has noted the direct opposite on several occasions, in *Carr, Kebodeaux*, and *Nichols*).

Appellant cannot violate State registrations requirements because, as all parties can agree, he is no longer required to register with the State of Michigan. Based on the above, if Appellant is not subject to State registration law, then he is not under an independent duty to register with the Federal government.

In the Sixth Circuit unpublished opinions are never controlling authority and do not bind this court. Appellee's argument is based on the unpublished decision in *U.S. v. Paul* which runs 100% counter to the U.S. Supreme Court holdings of *Carr,*

26

*Kebodeaux*, and *Nichols.*

**The authority which Appellee insists *Paul* stands for does not exist at all**. Anointing *Paul* as controlling authority would conflict with some of our most basic Constitutional principles and would be an error of Constitutional Magnitude.

The Relief requested by Appellant is consistent with the Plain Language of SORNA and the U.S. Constitution. **The purpose of the act was and is to coordinate State registries, not control them.**

For all of the above and Appellant's Opening Brief, Appellant respectfully requests this Court grant the relief requested.

## REQUEST FOR RELIEF

Appellant is seeking narrowly tailored, meaningful, effective declaratory relief *Ex parte Young*, 209 U.S. 123, 124 (1908) as applied to himself and any other similarly situated individual. The effect of such relief would be so de minimis in affect that it would not impact any Jurisdiction's ability (if it so chose) to maintain substantial compliance with SORNA (exception request #7).

Appellant requests this Court to Declare:

1. Consistent with U.S. Supreme Court precedent and the Plain Language of SORNA, there does not exist an independent duty to register with the Federal government because Registration is a local activity and

Jurisdictions (absent a Federal conviction) determine which State offenders are, and are not, required to appear on their registries.

2. That Appellant and other similarly situated individuals unconditionally removed from a registry in Federal or State Court are free to travel as any other U.S. citizen.

3. Removal in Federal or State Court from a registry has to be given full faith and credit (Article IV Section I) in any other Jurisdiction, exempting former State offenders from having to register in a new State of residence, work or school. At the minimal this should apply to all Sixth Circuit States.

4. Absent a Federal conviction, the Federal Government does not control the intrastate movements or activities of former State registrants removed from a registry in Federal or State Court.

5. The Federal Government does not control the intrastate movements or activities of active State registrants. That is why there is a 1 year State guideline penalty 34 U.S.C. §20913(e).

6. There does not exist an independent duty for any State offender to register with the Federal government (absent a Federal conviction), if the State of residency and conviction does not maintain any form of registry.

28

7.	If the State of conviction does not require registration, then there is no need to for an offender to register while traveling. This request does not challenge that an offender convicted in a State that does not maintain a registry would still have to register if they moved to, or worked or attended school in a jurisdiction requiring registration (absent a Court Order).

## REQUEST FOR ATTORNEY FEES AND STATEMENT OF NON-WAVIER

Appellant seeks  a remand for attorney only fees but does not waive review of his Constitutional issues which are capable of repetition yet evading review. If any new law would subject Appellant or any similarly situated (unconditionally released) individual to new registration, (absent a new sex conviction) it would be, at the least, cruel and unusual punishment under the 8th Amendment, a  continuing seizure under the 4th Amendment, a violation of due process under the 5th and 14th Amendments, and an Ex post facto violation under Article I of the U.S. Constitution.

If any of the above requested relief is granted, it would amount to success on a significant issue in litigation warranting recovery of attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Respectfully Submitted:

S/Daniel C. Willman
Daniel C. Willman
Attorney for Appellant

Dated: 5-9-2020

29

<u>**CERTIFICATE OF COMPLIANCE**</u>

**Certificate of Compliance Pursuant F.R.A.P 32(g)**

I certify that;

1.   This filing is in Compliance with F.R.A.P. 32-2. F.R.A.P 32(g).

2.   I hereby certify that this filing complies with the type-volume limitation of Fed.R. App. P 27 (d)(2)(A) or Fed.R. App 27(d)(1)(E).

3    This filing  was prepared in Corel/WordPerfect, converted to PDF Font 14-point Times Roman a proportionally spaced font. F.R.A.P 32 (a)(4)(5), and (6)

4.   This brief complies with the length limits permitted by Sixth Circuit Rule 32 (a)(7)(B)(ii).   This brief is <u>6,498 words</u>, excluding the portions exempted by Fed.R.App.P 32(f), if applicable.   The brief's type and type face comply with Fed.R.App 32(a)(4)(5) and (6).

s/Daniel C. Willman<br>Daniel C. Willman<br>Attorney for Appellant

DATED: 5-09-2020

---

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the forgoing with the clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate Next Gen CM/ECF system on **5-9-2020.**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/DanielC.Willman<br>Daniel C. Willman<br>Attorney for Appellant

DATED: 5-9-2020

**ADDENDUM**

**18 U.S.C. § 2250. Failure to register**

(a)     IN GENERAL.-Whoever-
(1)is required to register under the Sex Offender Registration and Notification Act;
(2)
(A)     is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
(B)     travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
(3)     knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
shall be fined under this title or imprisoned not more than 10 years, or both.

(b)     INTERNATIONAL TRAVEL REPORTING VIOLATIONS.-Whoever-
(1)     is required to register under the Sex Offender Registration and Notification Act
(2)     knowingly fails to provide information required by the Sex Offender Registration and Notification Act relating to intended travel in foreign commerce; and
(3)     engages or attempts to engage in the intended travel in foreign commerce;
shall be fined under this title, imprisoned not more than 10 years, or both.

(c)     AFFIRMATIVE DEFENSE.-In a prosecution for a violation under subsection (a) or (b), it is an affirmative defense that-
(1)     uncontrollable circumstances prevented the individual from complying;
(2)     the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and
(3)     the individual complied as soon as such circumstances ceased to exist.
(d)     CRIME OF VIOLENCE.-
(1)     IN GENERAL.-An individual described in subsection (a) or (b) who commits a crime of violence under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States shall be imprisoned for not less than 5 years and not more than 30 years.
(2)     ADDITIONAL PUNISHMENT.-The punishment provided in paragraph (1) shall be in addition and consecutive to the punishment provided for the violation described in subsection (a) or (b).

## 34 U.S.C. §20913 Registry requirements for sex offenders

(a)In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b)Initial registrationThe sex offender shall initially register—
(1)before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2)not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c)Keeping the registration current
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d)Initial registration of sex offenders unable to comply with subsection (b)
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

(e)State penalty for failure to comply
Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

**34 U.S.C. §20914. Information required in registration**

**(a) Provided by the offender**
  The sex offender shall provide the following information to the appropriate official for inclusion in the sex offender registry:
(1) The name of the sex offender (including any alias used by the individual).
(2) The Social Security number of the sex offender.
(3) The address of each residence at which the sex offender resides or will reside.
(4) The name and address of any place where the sex offender is an employee or will be an employee.
(5) The name and address of any place where the sex offender is a student or will be a student.
(6) The license plate number and a description of any vehicle owned or operated by the sex offender.
(7) Information relating to intended travel of the sex offender outside the United States, including any anticipated dates and places of departure, arrival, or return, carrier and flight numbers for air travel, destination country and address or other contact information therein, means and purpose of travel, and any other itinerary or other travel-related information required by the Attorney General. (
8)   Any other information required by the Attorney General.
**(b) Provided by the jurisdiction** The jurisdiction in which the sex offender registers shall ensure that the following information is included in the registry for that sex offender:
(1) A physical description of the sex offender.
(2) The text of the provision of law defining the criminal offense for which the sex offender is registered.
(3) The criminal history of the sex offender, including the date of all arrests and convictions; the status of parole, probation, or supervised release; registration status; and the existence of any outstanding arrest warrants for the sex offender.
(4) A current photograph of the sex offender.
(5) A set of fingerprints and palm prints of the sex offender.
(6) A DNA sample of the sex offender.
(7) A photocopy of a valid driver's license or identification card issued to the sex offender by a jurisdiction.
(8) Any other information required by the Attorney General.
**(c) Time  and manner**
A sex offender shall provide and update information required under subsection (a),

including information relating to intended travel outside the United States required under paragraph (7) of that subsection, in conformity with any time and manner requirements prescribed by the Attorney General.

## 34 U.S.C. §20920. Public access to sex offender information through the Internet
(a) In general

Except as provided in this section, each jurisdiction shall make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, **all information about each sex offender in the registry**. (Not the jurisdiction) The jurisdiction shall maintain the Internet site in a manner that will permit the public to obtain relevant information for each sex offender by a single query for any given zip code or geographic radius set by the user. The jurisdiction shall also include in the design of its Internet site all field search capabilities needed for full participation in the Dru Sjodin National Sex Offender Public Website and shall participate in that website as provided by the Attorney General.

## 34 U.S.C. §20921. National Sex Offender Registry

(a) Internet

The Attorney General shall maintain a national database at the Federal Bureau of Investigation for each sex offender and any other person **required to register in a jurisdiction's sex offender registry.** The database shall be known as the National Sex Offender Registry.

## 34 U.S.C. §20922. Dru Sjodin National Sex Offender Public Website

(a) Establishment

There is established the Dru Sjodin National Sex Offender Public Website (hereinafter in this section referred to as the "Website"), which the Attorney General shall maintain.

(b) Information to be provided

The Website shall include relevant information for each sex offender and other person **listed on a jurisdiction's** Internet site. The Website shall allow the public to obtain relevant information for each sex offender by a single query for any given zip code or geographical radius set by the user in a form and with such limitations as may be established by the Attorney General and shall have such other field search capabilities as the Attorney General may provide.